Thank you, Your Honor. May it please the Court, Alan Martin for Appellant McShane Construction, LLC. Your Honors, this matter comes before the Court today on de novo review from the District Court's grant of a motion to dismiss for failure to state a claim. Under the governing standards of the Supreme Court's Twobly and this Court's Braden's decisions, the applicable standard per those governing standards are that a complaint need only provide a short and plain statement of the claim showing the pleader is entitled to relief. The statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. The Court must accept as true the complaint's factual allegations and grant all reasonable inferences in favor of the nonmoving party. Okay, we're familiar with that. Just an interesting point of this case is that you've got Judge Girard writing an opinion interpreting Nebraska law, and for the most part, he wrote the Nebraska law. So how do you expect this Court to be correcting Judge Girard on Nebraska law? Well, Your Honor, a couple of things here. Judge Girard was one of many who was involved, and he did write the opinion. It was in 2004. The specific issue that is at issue in this case was not specifically addressed in auto owners. Auto owners stated, though, that occurrence would exist in the context of faulty construction if there was damage to other property. And there is not, under the business risk issue, exclusion issue, if a contractor's own work is defective and it can simply be remediated, replaced, that's not covered. But if other property is damaged, that constitutes an occurrence, and that's covered. The issue that was not before in auto owners was the issue of damage that occurs in the process of remediation. What was McShane's status as an insured in this proposition? Now, McShane was the general contractor. Correct.  Mallory. Mallory was the subcontractor that they hired to help them perform the general contract. They were a specialized subcontractor, Your Honor, for fire suppression. Yes, but for the general contractor, for your client. Yes. And there was a stipulated endorsement making your client a named insured on Mallory's policy, is that right? Additional insured, Your Honor. Mallory's the named insured, and then McShane becomes an additional insured. An additional named insured. You were a primary insured under this policy, isn't that right? With respect to the fire suppression. Yeah, the work that they did. Correct. And the policy provided general comprehensive liability coverage for both parties, your party. And so the sub didn't do their work, and you had to take it over, and it had some expenses. And what the occurrence was, the fact that the sub didn't do satisfactory work and the fire suppression system didn't work, is that right? There was negligence in the design and installation, but in the fix of that, walls had to be cut and ripped out, ceilings. The resilient chain had to be cut, literally hacked. Okay, so what was the insured act here? Your Honor? What? The occurrence is, the accident is, you can understand that you'd have to replace pipe if the pipe's the wrong diameter. But it wasn't, it was an accident of sorts, it was just faulty workmanship, wasn't it? But that's not something that McShane would expect, that it'd be ripping up buildings. Was there coverage for that? Yes. Not for the actual replacement of the fire suppression. For Mallory's own work, which was the fire suppression systems, there's nothing being claimed for that. I just want to be clear about it. But was there coverage under the policy that your client was a co-insured? For its negligence in the design and installation, yes. And your client designed it, and Mallory installed it, or is that what you're saying? No. Now, my client has no fire protection engineering staff whatsoever. That's why Mallory was hired. It had the expertise. Under law, it had a duty to have certified, qualified people who could do this and do the engineering design. And, you know, as part of this, under the law, the installation, because it's very specialized, and it's something that somebody has to have qualifications and meet both statutory and administrative code in Nebraska. So you're asking Gotham for insurance coverage for whatever happened, and the district court said you don't have any coverage. Is that essentially what he said? We are for the property damage and our vicarious liability as a result of Mallory's conduct. What was your vicarious liability? Well, we have to turn over to the owner buildings that are code compliant. I mean, that's by statute. That's a duty at law, and it's recognized by the Nebraska Supreme Court and Mowgli and other decisions. You had to redo the work? We had to do part of it or something like that. We didn't redo the fire sprinklers. We did the having to tear out the walls and get drywall contractors in there and ceilings and floors and cut chain. This was damages collateral to the failed fire system? Yes, separate. Consequence of their negligence. And you're arguing that you were covered under the Gotham policy? Yes, absolutely. Absolutely. Okay, now occurrence is defined as an accident, and I think it's been interpreted accident is something unexpected and unforeseen by the insured and so on and so forth. And I think that's at least one of the things Judge Girard got into and just said, well, this isn't an accident. It's foreseeable. To that extent, why is these extra damages not, they're the accident? In other words, the fire suppression failure you had to replace, but you're saying it was an accident that you had to tear out walls and so forth. Well, ordinarily you would expect that you have somebody who's doing it properly, but if something's wrong, for example, it was first discovered just to show because this is specialized by Captain Dickerson of the Omaha Fire Department in interstitial spaces, namely cavities that are between the floors and the ceilings. And that was found before something in an area where it could just simply be taken care of without ripping out walls and things of that sort. We weren't expecting that once walls were enclosed and this was done, that we would later learn that something behind walls and behind ceilings was not done properly and that this kind of extensive machine in all years and people with 20 plus years of experience had never seen anything like this. Was that connected to the fire suppression system that Mallory put in? No, this runs behind walls and leads to sprinklers, but you're tearing out walls, you're cutting holes in floors, ceilings, walls. The chain that's in there that is used to put the drywall up has to be cut to access this. No one foresaw that. This was something that in McShane's experience no one had ever seen before. They testified this was a fiasco of unparalleled circumstance for them. But this loss was covered, in your view, by the Gotham policy? Absolutely. Absolutely. Because Gotham spent six months adjusting this directly with McShane as it's insured on this policy. McShane also has liability, Highway 20, which the Nebraska Supreme Court says a general will be liable to an owner vicariously for the subcontractor's negligence, but even without contractual indemnity, there'll be implied indemnity because it's the primary party, the subcontractor's negligence, that's responsible. But that is what goes to the general, and that's why this policy that's issued to Gotham is covering McShane for that kind of liability. If, for example, the drywall contractor in putting up drywall had cut through electrical lines and caused a fire, well, that would have been insurance with a drywall contractor, and vicarious liability as a result of what a subcontractor had done with drywall. But this is specifically with respect to the fire suppression, which is Mallory. Under a CGL policy, that would have been covered, is that what you're saying? Absolutely. Absolutely, Your Honor. And let me back up also for a moment. They use an updated form. Virtually every single state Supreme Court and federal appellate court that has considered this kind of issue in the last half-dozen years all have uniformly said it's an occurrence, and this is the kind of damage. And the way the ISO policy was written was to give general contractors coverage in the context of subcontractors doing this, because this is a perfect example. A general is not going to have the knowledge. Even McShane looking at these sprinklers doesn't have fire expertise to even know that they were code violated. Well, why did Judge Gerard say it wasn't an occurrence? What was his rationale for that? Well, my understanding is he was looking very narrowly at auto owners. But the recent last year Drake-Williams decision, which is controlling, that is what governs this case, comes from the Nebraska Supreme Court. A number of the justices who were involved with auto owners now specifically consider the issue in a context that is virtually identical to McShane. And in building the arena in Lincoln, there was a general contractor and they were putting up pile caps to support the arena. A subcontractor provided rebar. It was defective because it was not cut properly. As a result of that defect, some of these structural supports were insufficient. They did not meet the requirements for structural support. And the question then became, how do you remediate that? And the Nebraska Supreme Court, many of the same justices and additional ones since then, since auto owners, in the time that has passed, specifically considered the issue of what happens when there is damage that goes beyond in the remediation process. And at Drake-Williams, they had the option of either demolishing these pile caps, but then there was an alternative that was available that dealt with being able to put a band to reinforce them. So as a result of that band reinforcement, the pile caps were not damaged. But the Nebraska Supreme Court was expressed in saying it would be occurrence and it would be property damage if the pile caps had been damaged and demolished as part of the remediation, which is exactly this case. And it was covered by the insurance policy? Absolutely. Absolutely. And I ought to add, too, that while this was the updated version of the CGL, which all the state Supreme Court cases that have come down and federal appellate court cases in the last half dozen years uniformly finding coverage in this context, Gotham went further. That has to be a state approved form. The insurance department has to approve that form, right? It varies by state by state. You know, there's a file and use and then approve versus pre-advanced filing, yes. It varies by state. But yes, ISO is the insurance services organization which provides these forms. And the insurance company, starting in 1986 with the subsequent forms that have been updated, brought in the coverage. But Gotham went further. Gotham included a fire suppression endorsement. And it took out exclusions that refer to property that needs to be repaired, restored, et cetera, et cetera, because your work was improperly performed on it. Let me ask you, the case you're citing, the recent one, was Drake-Williams, is that right? Yes, Your Honor. As I recall, the occurrence language that you're referring to was really dictative because they were saying what could have been. I thought the issue in Drake-Williams was property damage, whether or not it was property damage, not whether or not there was an occurrence. No, the court made specific reference to auto owners and the finding of occurrence in Drake-Williams. Property damage was part of the issue going hand-in-hand with it, but there's a specific reference in Drake-Williams to auto owners and the finding of occurrence. Well. It said contractors went beyond the damages to the contractor's own work product, therefore the petition properly alleged an occurrence and stated a cause of action for physical injury to tangible property. Because it went beyond the contractor's own work product, and therefore the petition properly alleged an occurrence and stated a cause of action for physical injury to tangible property. And it concluded in the conclusions, Your Honor, because the cost for which DWS sought reimbursement were not derived from any physical damage to the pile caps. Here would be the drywall and the walls and everything else. Or their temporary loss of use. Here the buildings were loss of use. Gotham adjusted it. Gotham agreed 71 days of loss of use for these buildings while this had to be done. There was, so in Drake-Williams there wasn't because the pile cap wasn't damaged, but the court made clear that if the pile caps had to be demolished, there would be an occurrence, there would be property damage, and if it threw off the construction schedule, there would be loss of use, which the policy covers. Doesn't this policy require Gotham only to pay sums that the insured becomes legally obligated to pay as damages? Isn't that language found in the policy? Well, legally obligated, there is not. Isn't that language found in the policy? Legally obligated is language that's found in the policy, Your Honor, yes. There's no court that has rendered a judgment here that creates a legal obligation to pay. So how do you get around the limitation of that language? Well, there's absolutely a legal obligation. It comes as no surprise that we had to provide a code-compliant system in these buildings. That had to be done. If that were not done, okay, 71 days could have turned into 140 days. The 100,000 that the owner, over 100,000, withheld from us would have multiplied by many times. Tenants weren't getting in. There's testimony in other counties, there were pods, these portable units, where tenants were putting their furniture temporarily. Tenants were starting to walk away from leases because these buildings could not be made available and their units could not be made available. So if McShane had not taken the steps it did to get this moving and to get this done and to mitigate the damages and make sure, I mean, the law, at the end of the day, Your Honors, when we all went to law school, our understanding was the law was to incentivize good conduct, publicly beneficial conduct. McShane did the right thing. It went in immediately. It said this had to be fixed. These fire suppression systems have to be made code compliant. Mallory didn't do proper work. Mallory's not to be paid for its shoddy work in case of the negligent design and installation, so that wouldn't be covered. But this is also consistent when you look hand in hand with Lasiak and independent tort doctrine, tort duty doctrine. In Lasiak, there's specific reference to other property. That's what we have here. Other property beyond the Mallory fire suppression systems. And you argue that all of this extra work you had to do emerged from Mallory's failure to adequately design and build the fire suppression system. Absolutely, Your Honor, and it's six months of exchanges, phone calls, documentation, directly between Gotham Adjusters, no attorneys, Gotham Adjusters and senior people, specifically Scott Hoppe, who was the person in charge of this project. For six months, phone calls and documentation, Gotham said it's reasonable, it's proper, and it promised that a half million dollar, $500,000 payment was coming, and then reneged and said a final report. And it used the rounded off number. It was $499 and some hundred, but it was used with McShane, it's a $500,000 amount. And then didn't pay, didn't say that there was a coverage dispute, didn't say we have reservation of rights, didn't say these are settlement negotiations. This is all after the fact. They sat there and you have Mr. Hoppe looking at the same documentation that's provided to Gotham, they talked through it, they agree, Gotham says this is right, we have all the documentation we need, it's proper, it's reasonable, and this is the amount. And that includes the owner's claim. Explicitly to the penny, too. And it comes out with a dollar amount to the penny of $499,000 X dollars and X pennies. Your Honor, I'd like to reserve a little time for rebuttal. Okay. Thank you. Thank you, Mr. Martin. Good morning, Mr. Roloff. Good morning. May it please the court, my name is Ross Roloff and I represent Gotham Insurance Company. McShane's position that it is entitled to recovery of approximately $500,000 as an additional insured under the Gotham policy is fundamentally incorrect. McShane's claim is not an insurance claim. Instead, McShane's claim is a claim against Mallory, Gotham's policyholder, in which McShane's status as an additional insured has absolutely no bearing. McShane's claim was properly dismissed and the district court's March 29, 2016 memorandum in opinion should be affirmed. Who did you insure? Gotham issued a policy to Mallory. Mallory is the one that didn't do the right work. That is correct. McShane was listed as an additional insured under the Gotham policy, but the Gotham policy is a liability policy. So to the extent that there is any coverage for a policyholder, that coverage arises out of a claim made against the policyholder, not a claim made by the policyholder. Did Mallory have any obligation to rectify any of the improper installation and so forth that was seen here? Mallory had no obligation. Well, let me rephrase that. If Mallory had an obligation to rectify any of the faulty workmanship... Your argument is that only Mallory would be covered with your policy then. If there is coverage, only Mallory would be covered because it is a claim by McShane against Mallory. That claim against Mallory may not be covered because there is no occurrence causing property damage. But the fundamental distinction that McShane misses here is that the Gotham policy is not a first-party policy. It is a third-party liability policy. You think that Springs and Legacy, and I think there are some other lawsuits out there, but if they had filed a lawsuit against both Mallory and McShane, you would have had to step in and defend. If a lawsuit had been filed against Mallory and McShane, yes. The analysis would arise about whether the alleged conduct is an occurrence. You had a duty to defend but not a duty to provide coverage. Is that what you're arguing? No. There's no duty as to McShane at all because McShane's claim is not a liability claim. McShane is... Let's kind of take what's the traditional thing. Okay. The wrong party here is the Springs-Legacy or whatever the name is. If they had filed a lawsuit, this policy would have ensured both Mallory and McShane to defend, correct? That's the third party. You just said that.  That's the third-party action. Now, if that third party then saw damages for not only the suppression, fire suppression, but also for tearing up the need to tear up the walls and so on and so forth, in that third-party action, would the Gotham ensure that and cover it? That would give rise to the analysis that the district court engaged in. Was there an occurrence giving rise to property damage? But yes, in that situation, the analysis would be, are Mallory and or McShane covered by the policy for the claim made against them? If there wasn't an occurrence, what was there here? If there wasn't an occurrence... Yeah, what would you call it? I would call it faulty workmanship that under well-established Nebraska law is not an occurrence under a liability policy. There needs to be an accident causing damage to property other than the work itself. There had to be a truck hit the thing too or something like that. Is that what you're saying? In this specific context, I suppose that the analysis would be different if the faultily installed sprinkler system had leaked and caused damage to furniture, to rugs, to property other than the work itself. But here, there was no accident. Other than the drywall and the stuff that had to be torn out. Is that right? Yes, but that still does not arise out of an occurrence. That's why the district court properly found that replacing the drywall and the insulation is not property damage caused by an occurrence. The Drake-Williams opinion... Well, I thought there was some case law that says that if there is an occurrence, you don't get the property damage for the repair of the system, but you do have, in the repair of the system, you'd cause damage to other property. And I thought that's what Shane is arguing here. Is, okay, we have this other property that to get in there and fix it, we've got to tear it up. But it's not caused by an occurrence. That's the problem. In auto owners, the court found that the duty to defend was triggered because there were allegations that the faultily installed shingles fell off and caused damage to the buildings and the roofs adjacent to where they had been installed. And the court found that those allegations were sufficient allegations of an occurrence causing damage to property other than the work itself. In the Drake-Williams opinion that is cited by McShane, the court did not get to the occurrence question because in Drake-Williams, the parties did not dispute that there had been an occurrence. But this was Mallory's work. It wasn't McShane's work. That's correct. This was Mallory's work. And so this entire analysis of whether there is an occurrence causing property damage really applies to whether McShane's claim against Mallory is covered such that McShane can recover against Mallory, which case was tried in state court. And it has nothing to do with whether McShane can directly make a claim against Gotham. A claim by McShane directly against Gotham is a first-party claim. It's not a claim that can be brought under a liability policy. And in fact, Nebraska law is well established that a claimant cannot recover against a tortfeasor's insurer. That's why I keep asking the question. I understand, and that's a big distinction. But if you take it, if Springs and Legacy were suing, I think you'd have a tough argument to say that you don't have coverage here. And I understand you're saying, well, that's not the situation. Yes. Here you've got two contracting parties that are suing, but go ahead. You can tell me, why would you not have coverage under the normal circumstance? Well, I think, I can't stand here and say that there wouldn't be coverage. I think the claim that you're describing would trigger the analysis by Gotham as to whether McShane and or Mallory are covered under the Gotham policy for a claim that the owner makes against either McShane or Mallory. Again, that's the third-party claim. That's the purpose of the liability policy, to backstop the policyholder in the event that the policyholder gets sued. In a liability policy, there's no right under the policy for a policyholder to bring its own claim for damages against the insurance company. And that is exactly what McShane is doing here. Well, one of their arguments is really a matter of policy. They're saying, you know, we did the right thing. We didn't wait, you know, just walk away from it and let Springs at Legacy sue us and go through that whole process. We stepped in and fixed it. And the point that I was getting to was, okay, they avoided the third-party action by stepping in and solving it. So as a policy matter, why would that, shouldn't that be recognized and covered? I think there are two responses to that. And they essentially go back to the occurrence issue. A general liability policy provides coverage for an accident, and it specifically includes contractual liability. If there is no claim made against McShane, and if that claim, or if there's a claim made and it is not presented to Gotham for defense and indemnity, then any payment, and I don't think the record reflects that a payment was made on the owner's claim, but any effort by McShane to pay that claim is a prohibited voluntary payment under the policy. That is to say, that is a business decision. You're changing the facts. Here, what I'm posing to you is the honorable companies just stepped in and said, you don't need to make a claim against us, we'll fix it. If they hadn't done that, they'd have been sued, and probably you'd have to pay. You'd certainly have to defend, and you'd probably have to pay. But here they said, you know, we'll do the right thing and we'll pay for it. So why is, you know, we're getting out of what is an occurrence, but it seems to me that there's trouble. No, but I understand your concern, I believe. And my response is that that's a business decision. That's a contractual obligation decision. That is a business decision made by McShane to, as they characterize it, do the right thing. That is not covered under a liability policy. Making that decision is not an occurrence. That's a business decision. That's why policies like Gotham's policy exclude contractual liability. We have to read the policy, don't we, to find out what was in the policy. You say that under a comprehensive general liability policy there must be an accident. But it's my understanding, maybe I read this someplace else, that there was some loss of use coverage involved here and some other things that went along with this. And certainly there was a loss of use here. There was a loss of use of the apartment complex if this had been done. Yes, loss of use is typically included as part of the property damage definition under current general liability policy forms. But again, there must be an occurrence. There has to be an accident causing damage to property other than the work itself. So to get to that loss of use portion of the policy, there still has to be an accident. Loss of use isn't an occurrence, huh? Loss of use is not an occurrence. Loss of use is an element of property damage. And if there is property damage caused by an occurrence, loss of use may be covered. Well, let's say you lose that argument and it is an occurrence or it's determined to be an occurrence. I asked the question earlier about this language, policy language, that says that Gotham is required to pay the insured sums that the insured becomes legally obligated to pay as damages. Is that provision satisfied here? No, it is not, and the district court was correct when the district court found it was not. The legal obligation to pay, again, also comes back to an occurrence. But assuming there was an occurrence, there has to be a legal obligation to pay. And there is nothing in the record that reflects that there was a legal obligation for McShane to pay. As best I can determine, what's really at issue here is the owner's claim. Maybe there was a moral obligation, like Judge Riley was talking about, to do the right thing. That again comes back to the lack of an occurrence, and whatever decision that was made by McShane is a business decision. That decision is not an occurrence. There's also a policy provision that says the policyholder is prohibited from making any voluntary payments. And so I would say that that payment is also a voluntary payment in addition to not being an occurrence. Well, I understand the argument. Let me give you what I think. What I thought you would say was if it were not, the insured is playing with the insurance company's money. Then it has no incentive to go out. Well, its incentive is to just go out and tell its contracting party, gee, we'll fix everything and we'll take you out to dinner and we'll do all these things. It's all on the insurance company. I mean, I think that's the policy argument coming back the other way on it. I agree with you, Your Honor. But it still requires an occurrence, and it still has to be a liability claim against McShane. There is no evidence. There's nothing to suggest that there is a claim against McShane that would give rise to an analysis of whether McShane is covered under this policy. McShane's effort here is an effort to recover under the policy under which it is an additional insured. But its status in making this claim is not as an additional insured. It is as a claimant. So the damages that we're talking about are really the damages that McShane would be asserting against Mallory in the trial court action in the state court litigation involving breach of contract claims between McShane and Mallory. There is one final point that I would like to address relating to the statutory relief claim. McShane argues that Gotham omitted to advise the district court that it engaged in the business of insurance without a license and without being an admitted insurance company. This argument has no merit. The Gotham policy states on its declarations page that Gotham is a non-admitted carrier in Nebraska. Regular insurers, also called standard or admitted carriers, must follow statutory regulations controlling the risks that they insure and the premiums they charge. Non-admitted or unlicensed carriers, sometimes referred to as surplus lines insurers, fill the need for coverage in the marketplace by insuring those risks that are declined or cannot be insured under the standard underwriting and pricing processes of admitted insurers. This does not mean that the policies that they issue are invalid or that they are engaging in some sort of improper conduct. It simply means that surplus lines insurers are subject to different regulations from those that govern standard carriers, and this allows them to insure the risks that standard carriers cannot or will not insure. Gotham is approved by the Nebraska Department of Insurance as a surplus lines carrier, and McShane's suggestion of anything improper based on Gotham's status should be disregarded. In conclusion, the District Court's March 29, 2016 memorandum and order should be affirmed because the District Court properly found there is no private cause of action under the Nebraska Unfair Insurance Trade Practices Act or the Nebraska Unfair Insurance Claims Settlement Practices Act. The condition precedent of an occurrence causing property damage was not satisfied. The condition precedent of McShane becoming legally obligated to pay damages is not satisfied. McShane was not a third-party beneficiary under the policy. The doctrines of waiver and estoppel do not apply, and there are no direct actions under Nebraska law. For these reasons and for those set forth in its brief, Gotham Insurance Company respectfully requests that this Court affirm both the District Court's order granting Gotham's motion to dismiss and the corresponding judgment in Gotham's favor. Thank you. Thank you, Mr. Rolla. Mr. Martin has some time here. We'll give you two minutes if you want to roll up two minutes there. Not 15 minutes. Two minutes. There we go. Thank you, Your Honor. I want to quickly get to auto owners and Drake Williams, which is specifically in there. And it said, we reasoned that damage to the roof structures and buildings represented an unintended, unexpected consequence of contractors' faulty workmanship went beyond the contractor's work product and, therefore, the petition properly alleged an occurrence. In contrasting Drake Williams where the pile caps were not damaged, the Court said, unlike auto owners, the amount it seeks to cost to make them conform because it was simply a band that was done, there was no damage to the pile caps, was not damaged to other property. And concluded, because the cost for which DSW sought reimbursement were not derived from any physical damage to the pile caps or temporary loss of use, there was no property and, thus, no coverage under the seized jail policies. So they went hand in hand. For a freshman, Drake Williams, was that an insured against an insured or was that a separate claim? Insured versus, yeah, insurance company. Same thing. CGL. Same posture. Okay. Your Honor, I did want to get to the issue of the owner claim because, Your Honor, hit that. They're pretending there wasn't an owner claim. They adjusted it. It's in the schedules. During six months, the owner withheld over $100,000. Gotham admitted there was a claim. The reason there wasn't any suit and anything to defend was Gotham agreed that all the monies that McShane expended were reasonable. There was no check in taking people to dinner and McShane did not want this headache. Trust me, Your Honor. It went and did what it had to do. Gotham went through it. There are written communications, confirmations from Gotham saying it's documented, it's reasonable, it's proper, 70.1 days were appropriate, and scheduling $97,588.64 for the owner claim. That's why there was no suit and no litigation because Gotham agreed to pay this and then reneged. So the reason you don't have this suit is because they wanted McShane to mitigate. McShane did the right thing. They looked at everything McShane did, said it was proper, it's reasonable, it's in writing, and scheduled, and it's scheduled as owner claim. It's in the exhibits. In the report, it's scheduled as the owner claim. Your time's expired. I'm sorry, Your Honor. All of that's in your brief. Yes. Thank you, Your Honor. Thank you very much. Thank you, both of you, for your arguments. Very well done. Mr. Hefford, good to see you. Mr. Kogedia, it's good to see you. We'll take it under advisement. Thank you, sir. Thank you. Thank you.